W. C. JONES and R. F. BICKERTON, Assignees of Pade-
ken, a Bankrupt, *vs.* JAMES WIGHT.

IN EQUITY.

DECISION RENDERED MAY 4, 1878.   NOT HITHERTO REPORTED.

HARRIS, C.J., JUDD and McCULLY, JJ.

A deed absolute on its face, the Grantee giving an agreement to Grantor
to reconvey the property to him on payment of the debt within a time
stated, which was the consideration of the deed, held to be a mortgage.
Notes given to cover accumulated compound interest held to be not
void.

OPINION OF THE COURT, BY HARRIS, C. J.

The first point to be determined in this case, is whether the
deed set forth in the pleadings as having been executed August
1, 1875, and acknowledged on the 14th of the same month,
was in point of fact a mortgage to secure the repayment of a
debt, or was a deed for a certain sum of money with a condition
to reconvey the property under certain conditions.

The deed upon the face of it is an absolute deed, and the so-
lution as to whether it was intended to be a mortgage by the
parties must depend upon all the evidence and circumstances of
the case. 1st Washburn, R. P. 494.   It appears that previous
to the date of the deed, Padeken was owing the defendant the
sum of $13,242, to secure the payment of which there were in
existence several mortgages upon Padeken's land and other
property in Kohala, Hawaii; that at the time of the making of
the deed in question, Padeken had been arrested and was de-
tained in prison at Kohala upon a charge of cattle stealing;
that a suit had been commenced by one H. B. Jackson against
Padeken to recover the sum of $5000 damages for cattle alleged
to have been feloniously taken.   And upon the allegation that
the debt was contracted in a fraudulent manner, and a further

allegation that Padeken was disposing of his property, an attachment had been placed upon the said property; that at the time of the execution of the deed, 1st August, 1875, the indebtedness of Padeken to defendant had increased, as the defendant alleges, so that there was due and owing to him the sum of $17,665.

The deed above alluded to purports to convey all the property previously mortgaged, and in addition all the horses and cattle branded " H. C.," and the wool, sugar mill, carts, and other agricultural implements on the land, with the wool press and sorghum pan.

It is charged in the bill that the defendant gave an agreement in writing to Padeken to re-convey the lands and property if the amount of the mortgages, interest and expenses to be incurred in carrying on the ranch should be paid on or before December 31st, 1875.

The defendant in his answer to the bill says that he did give such an agreement, but that it was not done at the time of making the deed, but subsequently (this agreement is not produced.) But in the defendant's letter to the *Hawaiian Gazette* dated 23d February, 1877, and published March 14th, of the same year, he uses the following expressions:

" I required of him to give me a deed of sale of certain lands duly mortgaged to me, together with certain other articles on the property; at the same time, I gave him an agreement.in writing to re-deed the lands and property to him, if, on or before the 31st of December, 1875, he paid me the amount of the mortgage, together with accumulated interest and all expenses I had incurred to carry on the ranch, while in my possession.

" He asked me to do this as he thought the property would realize more if advertised for sale, and I was perfectly willing to do so, as I preferred my money to the property, though I would not consent to let the property go further to wreck by being kept in charge of any of his family."

By this it will appear : First, that Padeken did not offer to sell the land, but being in prison was " required " to make the deed. Second, that "at the same time" an agreement was given

to him to re-deed the land if the amount of the mortgage, together with the accumulated interest, etc., was paid. Third, that Padeken was unwilling to let the land go to this defendant because he thought it would realize more if advertised for sale. Fourthly, that the defendant was willing to make the arrangement, because he "preferred his money to the property," which is equivalent to saying that all the defendant desired was to secure the re-payment of his money—but he continues, that he was unwilling that the property "should remain with any one of his (Padeken's) family, because it would go to wreck." On this statement of facts, made by the defendant himself, it cannot be doubted that the deed upon which he relies, taken with the agreement to re-convey, was a mortgage intended to secure the re-payment of a previous debt, and accordingly it appears by the defendant's letter to Padeken, dated September 2nd, 1875, that Padeken claimed that he had a right to sell the land; that he had requested in a letter a week before that it should be advertised and the expenses of advertising were to be paid by Padeken. In that letter defendant further requested that Padeken send him a bill of sale of some other things to secure the price of advertising, stating as a reason that if the suit then pending for $5000 went against him, it would sweep away all ; and further adding, "You understand me, you sell me these things to cover the expenses of advertising, and if you are able to.sell the land, on paying me the cash I will return them with the rest to you ; if not they are mine." It will be seen that the proposition then made regarding these last mentioned things was for a transaction exactly similar to that of the deed previously made in August. From all this it is evident that it was the clear and certain intention of the parties that the deed should operate as a security for the re-payment of money, and if so, it can make no difference whether the agreement to re-convey be contained in the same instrument, or as in this case in a different instrument, it is still a mortgage (4th Kent, 142,) and the mortgagor has the right of redemption. Indeed from all the evidence in the case there was not literally an agreement to re-convey to Padeken, but rather an agreement that Padeken

might sell the land and that the defendant would convey it to whomsoever might buy it, on receipt of the amount of the debt.

But it appears from the records that the plaintiffs in this action had taken possession of a sugar mill, included in the deed of August above alluded to, and disposed of the same, and that the defendant in this action at the October Term of this Court, 1876, brought an action of *trover* for the value of the mill, and had verdict and judgment; that the defense set up was that the deed in question was a fraudulent one, and that the testimony of John Padeken, the son of the grantor, to the effect that the deed was executed with the condition that the property should be returned in three months, if Padeken got over his troubles, was given, and whence it was argued that the deed was made to defraud, hinder, or delay creditors, and notwithstanding the verdict was in favor of this defendant, thus establishing the *bona fides* of the deed; and further that on motion to set aside the verdict, the verdict was sustained, and thus the *bona fides* of the deed is fully established; hence it is argued that the whole matter now before the Court is *res adjudicata*, and that the judgment obtained in the previous action is a bar to a recovery in this proceeding. This point is pressed upon the Court with great diligence and ability, and in the course of argument it is remarked that the only additional evidence now offered against the validity of this deed is the agreement to reconvey, which is merely cumulative evidence to that offered at the former trial, to show that the sale was conditional. But the validity of the deed, by the light we now have, is further established; the verdict of the jury was right then, and it is farther established as right now. The deed was adjudged to be a valid deed then, and the agreement to reconvey would not constitute a defence to an action of *trover* for the taking out of this defendant's possession a mill on which he had a mortgage to secure the payment of a debt; he was entitled to possession of that mill, and to apply the proceeds of it to the payment of his debt. In that action the defendants contended that the deed was fraudulent and invalid, and it was decided to be a valid deed, and that the plaintiff was entitled to recover, he being wrongfully

dispossessed of the mill. In this action that judgment is not challenged, and the effect of a judgment for the plaintiffs will be quite in conformity with the preceding verdict and judgment. This action goes on the assumption that the deed is a valid one, but that the agreement to reconvey in equity constitutes the deed a mortgage, and that the defendant has the property only for the purpose of paying his debt; therefore the judgment on the verdict of October last cannot be a bar, for it is not inconsistent with the fact that this is a valid deed; that the property should be now disposed of for the purpose of fulfilling all the conditions of the deed and the agreement too, namely, to pay all the debt of Padeken to the defendant, and that the residue go to those legally representing him.

It is argued by the plaintiffs in this action that the accounts stated by the defendant, by which he makes his debt to be $17,665, should be re-opened, because that interest is cast upon interest. The statute in this Kingdom is as follows:

§ 1484 of C. C. "No action shall be maintainable in any Court of this Kingdom to recover compound interest upon any contract whatever."

It has always been holden that compound interest cannot be recovered on and in pursuance of an antecedent contract, but if a party would deliberately give a new note for interest due by him, such a note would not be void as being made without consideration.

*Wilcox vs. Howland*, 23 Pick., 169, *et passim*. Now there can be no difference in principle between a case where such a note has been given and where the parties have settled an account from year to year on the principle of interest going to the general account and annual interest being made; the note thus given for interest is the evidence, not of his having agreed to pay compound interest in the original contract, but of his agreement to pay interest on the new debt thus created. Instead of paying the interest in coin, it is paid by a note bearing interest. Instead of borrowing the money of some one else and giving a note for it bearing interest, he borrows it of his original creditor; he owes a new debt to his creditor, which he is unable to pay, and

therefore gives a note for it, whereby he makes a new contract which is no part of the original contract. So likewise an account stated from year to year, as in this case, in which interest is charged up and made a part of the account, and which account has been accepted by Padeken, furnishes evidence that Padeken agreed to it at the time of the account being presented to him ; and if he agreed to it at the time as a new contract, he is bound by it ; it is no part of the old contract, and is a separate and distinct matter, and is therefore not in violation of the statute, because it is not a suit to recover compound interest upon any contract.

The master may therefore take an account of what is due and owing the defendant, starting with the sum found due at the settlement of the account between the defendant in this cause and Padeken, which is indicated in the deed of August, 1875, allowing him interest on that amount from the date of the deed, and charging him with all the live stock and other personal property received from Padeken, as well as with the mesne profits of the land. If any of the personal property has been sold, the price at which it is sold shall be taken as the valuation ; for that which has not been sold, as well as for the mesne profits of the land, testimony may be taken if it is necessary. The amount thus ascertained, with the interest on the receipts, valuations and mesne profits, is to be deducted from the principal and interest of the debt, in order to determine the amount due to the defendant ; and to liquidate this amount, a decree of foreclosure of the real estate may be taken out according to the usual practice of this Court. In selling the real property it may be devided into lots or sold in gross, whichever way is most likely to realize the largest sum. The defendant is, of course, to be allowed to purchase at the sale, and after satisfying the debt thus found due to the defendant, the balance, if any, is to be paid into Court.

Costs to be the subject of further adjudication.

Parties may apply, from time to time, for further orders and instructions if it should become necessary.

*Plaintiffs*, in person.

*A. S. Hartwell*, for defendant.